UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II<br><br>**Plaintiff**<br><br>vs.<br><br><br><br>Boston Trust Walden Company f/k/a Sun Savings and Loan Association and Bonnie B. Porter<br><br><br><br>**Defendants**<br><br>Top Fuels f/k/a PitStop Fuels<br>Harpster Receivables Management Corporation<br><br>**Parties-In-Interest** | CIVIL ACTION NO: 2:20-cv-00148-DBH<br><br><br><br>RE:<br>132 Peacock Hill Road, New Gloucester, ME 04260<br><br>Mortgage:<br>November 7, 2007<br>Book 25686, Page 31 |

**AFFIDAVIT OF TONYA M. TILLMAN IN SUPPORT OF PLAINTIFF'S MOTION REQUESTING THE COURT ENTER DEFAULT JUDGMENT ON DOCUMENTARY EVIDENCE AS TO BOSTON TRUST WALDEN COMPANY F/K/A SUN SAVINGS AND LOAN ASSOCIATION, BONNIE B. PORTER, HARPSTER RECEIVABLES MANAGEMENT CORPORATION AND TOP FUELS F/K/A PITSTOP FUELS**

I, Tonya M. Tillman being duly sworn, hereby depose and state as follows:

1. I am employed as a Default Servicing Officer for Caliber Home Loans, Inc. ("Caliber").

2. Caliber is the Servicer and custodian of the applicable records for the investor and named Plaintiff in this action, U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II ("U.S. Bank").

3. As Servicer, Caliber is responsible for the day to day activity on the loan including keeping business records of all payments and advances, sending and receiving correspondence, monitoring the asset following default for property preservation issues and communicating

with the borrower regarding loss mitigation and workout alternatives.

4. I have worked with Caliber for five (5) years and have a total of seventeen (17) years of experience in the default industry.

5. Prior to working for Caliber in this capacity, I was employed by Ocwen Financial Services ("Ocwen") as a Senior Loan Analyst and Corporate Witness for five (5) years.

6. My duties and responsibilities at Ocwen included reviewing and analyzing mortgage loan files, communicating facts from business records kept in the ordinary course of business and working closely with attorneys on loss mitigation and contested foreclosure matters.

7. Prior to Ocwen, I was employed for ten (10) years by GMAC Financial Services and its predecessors, GMAC Residential Capital ("GMAC"), as a Relationship Manager III – Default Servicing.

8. I was initially employed to address inbound calls from customers and internal departments regarding fraudulent activity, loan modifications, re-establishment of service and verification of legitimate customer usage and I created contemporaneous notations in the corporate business records concerning these activities and worked within the systems that maintain the financial records for each mortgage loan.

9. As the Relationship Manager for GMAC, I managed a portfolio of mortgage loans in default status, focusing on the ability to return the assets to a performing loan status through proposed workout solutions, including counseling borrowers on additional loss mitigation and non-retention resolution options when retention was not possible.

10. In that position with GMAC, I also performed due diligence reviews on loans acquired from other servicers prior to onboarding to the GMAC platform, including quality control measures, monitoring investor guidelines, and compliance issues.

11. I have personal knowledge and daily interaction with process, systems, people and

documents necessary to the servicing of loans in default by Caliber.

12. My current daily duties and responsibilities with Caliber include being responsible for personal review and analysis of business records, preparation of exhibits for mediations, discovery responses, depositions, trial affidavits and preparation for trial testimony in foreclosure, and title and bankruptcy matters involving real estate loans serviced by Caliber.

13. I work daily with the Caliber record keeping systems including *Sagent*, the secure, password protected, contemporaneous record keeping system and database of Caliber which documents all transactions involving serviced loans, including customer service, loss mitigation, escrow, insurance, property preservation, collections, and correspondence and is accessed by all Caliber departments and updated at or near the time the transaction occurs by Caliber employees whose only duty is to make and keep such records based upon their personal knowledge in conformity with the standard business practices of Caliber.

14. I also work daily with *Black Knight*, the secure, password protected, web-based record keeping system used to communicate with our Attorneys, exchange information and documents, and document attorney fees and costs and all corporate advances.

15. I also work daily with *Carbon Copy/Attorney Portal*, the secure, password protected, web-based portal for document retention.

16. Security measures I have been subject to include an initial background check, restricted access to physical locations and password protected access to record keeping systems.

17. With regard to training, in addition to the training I received throughout the twelve (12) years in the default industry prior to working for Caliber, I have received specific training from Caliber in the above record keeping systems, training with default production teams that create borrower correspondence, answer borrower inquiries, work with borrowers on loss mitigation and workout alternatives, and prepare for litigation.

18. I have also participated in legal training from our retained law firms several times a year, once a month training with Caliber management on specific legal issues, and one-on-one training on specific directives.

19. I have participated in training on and have directly observed and participated in Caliber's boarding process following the acquisition of servicing on new pools of loans.

20. That process involves initial review of the database which contains business records reflecting all transactions on the loan, including payments and advances, correspondence, transactions logs, prior loss mitigation activities, escrow advance records and loan documents, including documents from origination and servicing since origination.

21. The boarding process includes cross-checking records by a dedicated specifically trained team, including, but not limited to, transaction log entries, pay-histories and borrower correspondence.

22. After the quality control checks from each of the departments, including escrow, insurance, accounting, loss mitigation, bankruptcy, foreclosure, REO, Deed-in-Lieu and Property Preservation and, if verified, the data is accepted into Caliber's system and relied upon by Caliber as Caliber begins servicing the loan and corresponding with borrowers.

23. With regard to the mortgage loan in this case, I have access to and am familiar with the business records of the borrower's account including the business records of Caliber which include records originally created by prior servicers which have been verified and incorporated into Caliber's records during our boarding process and relied upon in Caliber's servicing of this loan.

24. If I were called upon to testify, I could and would testify competently to the facts set forth herein based upon my personal knowledge and training in the industry generally, and specifically with regard to Caliber's business record keeping process and procedure.

25. I am authorized to submit this affidavit on behalf of the Plaintiff.

26. The business records we retain and maintain include a loan history, which reflects all of the payments received and advances made during the life of the loan, copies of correspondence to and from the borrower, the origination file, the original collateral file and Bailee history and collection notes documenting conversations with the borrower, if any, as well as other collection efforts.

27. My knowledge as to the facts set forth in this affidavit is derived from my personal knowledge of the business, relied upon by Caliber, which are contemporaneously made and kept in the ordinary course of business by Caliber as servicer for the Plaintiff, at or near the time of the transaction reflected in the record by or from information obtained from a person with personal knowledge of the facts set forth in said records whose duty it is to make and keep such records based upon their personal knowledge and the policies and procedures of Caliber.

28. I have reviewed these records both as they are attached to and submitted with this affidavit and as they exist within our company's database and I have confirmed their accuracy.

29. Caliber, as Servicer for U.S. Bank, employed regular business practices for creating and maintaining the records that were sufficiently accepted by Caliber Home Loans, Inc. to allow reliance on the records by Caliber, as Servicer for U.S. Bank.

30. Caliber, on behalf of U.S. Bank, employed regular business practices for receiving such records as Servicer for U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II, by manual or electronic processes, and Caliber as Servicer for U.S. Bank has integrated the records into its own records, relies upon them in its day-to-day operations and maintains such records daily through regular business processes.

31. I have access to and am familiar with the payment history and other documents attached

hereto and confirm that these records are among Caliber as Servicer for U.S. Bank's own records and Caliber as Servicer for U.S. Bank relies on these records in its day-to-day operations.

32. I have personal firsthand knowledge, based on my supervision of or participation in day-to-day business operations of Caliber Home Loans, Inc. as Servicer for U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II, that the records were among those created, maintained and transmitted through regular business practices.

33. As such, I am a "qualified witness" who can provide trustworthy and reliable information about the regularity of the creation, transmission and retention of the records offered pursuant to Fed.R. Evid. 803(6).

34. My review of this particular loan, through review of the loan documents, transaction records and business records in *Sagent, Black Knight and Carbon Copy/Attorney Portal* systems maintained by Caliber revealed that the above outlined boarding process was followed and that there were no adverse results.

35. On November 7, 2007, the Defendant, Bonnie B. Porter, and Ronald L. Porter executed and delivered to EverHome Mortgage Company a certain Note in the amount of $115,200.00. *See* Exhibit A (a true and correct copy of the original Note, as kept in the ordinary course of business by Plaintiff's counsel, is attached hereto).

36. The Plaintiff is the holder and owner of the Note described pursuant to the endorsement of the document and delivery and physical possession of the aforesaid Note is in conformity with 11 M.R.S.A. § 3-1201, *et seq.*, 10 M.R.S. § 9416, <u>Simansky v. Clark</u>, 147 A. 205, 128 Me.280 (1929) and payment of value.

37. The aforesaid original Note is physically held by Doonan, Graves & Longoria, LLC as an agent for the Plaintiff in their offices in Beverly, MA. *See* affidavit of Matthew N. Kelly ¶ 22.

38. I have reviewed the aforesaid Note on October 30. 2020, during a video conference and can confirm the original Note I viewed is identical to Exhibit A attached hereto.

39. To secure said Note, on November 7, 2007, the Defendant, Bonnie B. Porter, and Ronald L. Porter executed a Mortgage Deed in favor of Mortgage Electronic Registration Systems, Inc., as nominee for EverHome Mortgage Company, securing the property located at 132 Peacock Hill Road, New Gloucester, ME 04260 which Mortgage Deed is recorded in the Cumberland County Registry of Deeds in **Book 25686, Page 31**. *See* Exhibit B (a full legal description of the encumbered property is attached hereto) and Exhibit C (a true and correct copy of the Mortgage Deed as recorded in the public records and as kept in the ordinary course of business by Plaintiff is attached hereto).

40. Upon information and belief, on September 4, 2008, Ronald L. Porter passed away. *See* Complaint ¶ 20.

41. The Mortgage was then assigned from Mortgage Electronic Registration Systems, Inc., to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP by virtue of an assignment of Mortgage dated May 23, 2012 and recorded in the Cumberland County Registry of Deeds in **Book 29643, Page 223**. *See* Exhibit D (a true and correct copy of the Assignment of Mortgage as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

42. The Mortgage was then assigned from the Bank of America, N.A. to Nationstar Mortgage LLC by virtue of an assignment of Mortgage dated May 10, 2013 and recorded in the Cumberland County Registry of Deeds in **Book 30753, Page 264**. *See* Exhibit E (a true and correct copy of the Assignment of Mortgage as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

43. The Mortgage was then once again assigned from the Bank of America, N.A. to Nationstar Mortgage LLC by virtue of an Assignment of Mortgage dated February 15, 2016 and recorded in the Cumberland County Registry of Deeds in **Book 32917, Page 308**. *See* Exhibit F (a true and correct copy of the Assignment of Mortgage as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

44. The Mortgage was then assigned from Nationstar Mortgage LLC to Federal National Mortgage Association by virtue of an Assignment of Mortgage dated June 27, 2016 and recorded in the Cumberland County Registry of Deeds in **Book 33238, Page 79**. *See* Exhibit G (a true and correct copy of the Assignment of Mortgage as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

45. The Mortgage was next assigned by Quitclaim Assignment from Everbank, as successor by merger to Everhome Mortgage Company to Federal National Mortgage Association by virtue of a Quitclaim Assignment dated June 27, 2016 and recorded in the Cumberland County Registry of Deeds in **Book 33238, Page 80**. *See* Exhibit H (a true and correct copy of the Quitclaim Assignment as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

46. Nationstar Mortgage LLC had the authority to execute the aforesaid Quitclaim Assignment on behalf of Everbank, as successor by merger to Everhome Mortgage Company pursuant to a Limited Power of Attorney dated September 21, 2015 and recorded in the Androscoggin County Registry of Deeds in **Book 9503, Page 71**. *See* Exhibit I (a true and correct copy of the Limited Power of Attorney as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

47. The Mortgage was then assigned by Nationwide Title Clearing, Inc. as Attorney-in-Fact for Federal National Mortgage Association to U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II by virtue of an Assignment of Mortgage dated January 28, 2020 and recorded in the Cumberland County Registry of Deeds in **Book 36377, Page 61**. *See* Exhibit J (a true and correct copy of the Assignment of Mortgage as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

48. Nationwide Title Clearing, Inc. had the authority to execute the aforesaid Assignment of Mortgage on behalf of Federal National Mortgage Association pursuant to a Limited Power of Attorney dated August 30, 2016 and recorded in the Cumberland County Registry of Deeds in **Book 34452, Page 263**. *See* Exhibit K (a true and correct copy of the Limited Power of Attorney as recorded in the Registry of Deeds and kept in the ordinary course of business by Plaintiff is attached hereto).

49. On February 15, 2014, the Defendant, Bonnie B. Porter, entered into a Loan Modification Agreement with Caliber Home Loans, Inc., establishing the principal balance as $112,166.77 and reaffirming the validity and enforceability of the aforesaid documents. *See* Exhibit L (a true and correct copy of the Loan Modification Agreement as kept in the ordinary course of business by Plaintiff is attached hereto).

50. The Defendant is presently in default on the aforesaid modified loan having failed to make the monthly payment due November 1, 2015, and all subsequent payments, and, therefore, have breached the condition of the aforesaid modified Mortgage and Note.

51. Notice in conformity with 14 M.R.S.A. § 6111 and/or the terms of the subject Note and Mortgage was sent to the Defendant, Bonnie B. Porter, on February 28, 2020, as evidenced by the Certificate of Mailing. *See* Exhibit M (a true and correct copy of the Notice of Right

to Cure and proof of mailing as kept in the ordinary course of business by Caliber as Servicer for U.S. Bank is attached hereto) (Personal information has been redacted to protect the privacy of the Defendant.

52. This Notice included, but was not limited to, the Defendant's (mortgagor's) right to cure and time period therefore:

   a. The mortgagor's right to cure the default as provided in subsection 1 of 14 M.R.S.A. § 6111 (By full payment of all amounts that are due without acceleration, including reasonable interest and late charges specified in the mortgage or note, as well as reasonable attorney's fees. If the mortgagor tenders payment of the amounts before the date specified in the notice, the mortgagor is restored to all rights under the mortgage deed as though the default had not occurred.);

   b. An itemization of all past due amounts causing the loan to be in default;

   c. An itemization of any other charges that must be paid in order to cure the default;

   d. A statement that the mortgagor may have options available other than foreclosure, that the mortgagor may discuss available options with the mortgagee, the mortgage servicer or a counselor approved by the United State Department of Housing and Urban Development and that the mortgagor is encouraged to explore available options prior to the end of the right-to-cure period;

   e. The address, telephone number and other contact information for persons having authority to modify a mortgage loan with the mortgagor to avoid foreclosure, including, but not limited to, the mortgagee, the mortgage servicer and an agent of the mortgagee;

   f. The name, address, telephone number and other contact information for all counseling agencies, approved by the United States Department of Housing and Urban Development, operating to assist mortgagors in Maine to avoid foreclosure;

    g. Where mediation is available as set forth in section 14 M.R.S.A. § 6321-A, a statement that a mortgagor may request mediation to explore options for avoiding foreclosure judgment; and

    h. A statement that the total amount due does not include any amounts become due after the date of the Notice. *See* Exhibit M.

53. I personally have access to and have reviewed the aforesaid Notice in conformity with 14 M.R.S.A. § 6111 and/or the Note and Mortgage.

54. The total debt owed under the Note and Mortgage as of November 13, 2020 is one hundred ninety-five thousand nine hundred ninety-seven and 36/100 ($195,997.36) dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $111,016.01 |
| Interest | $39,758.48 |
| Escrow Balance | $17,839.81 |
| Total Advances | $24,155.00 |
| Deferred Late Charge Amounts | $121.82 |
| Late Charges Due | $3,106.24 |
| Grand Total | $195,997.36 |

Additional interest is continuing to accrue at a rate of 7% per annum (future foreclosure fees and costs are waived). *See* Exhibit N (a true and correct copy of the bate-stamped judgment figures and payment history as kept in the ordinary course of business by Caliber as Servicer for U.S. Bank is attached hereto.) (Personal information has been redacted to protect the privacy of the Defendant).

55. I have personally reviewed this payment history and have highlighted and initialed the line item on the bate-stamped page from Exhibit N that reflects the last payment received. *See* Exhibit O (a true and correct copy of the bate-stamped page with my initials next to the last

payment is attached hereto).

56. The Loan was initially serviced by Nationstar Mortgage LLC from December 2007 until January 2020 and it was transferred for servicing to Caliber on January 6, 2020.

57. Plaintiff waives the collection of any further attorney's fees.

58. Mediation has not been requested by the Defendant and has been waived.

59. Plaintiff waives any deficiency in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of November, 2020

/s/Tonya M. Tillman
Tonya M. Tillman
Default Servicing Officer
Caliber Home Loans, Inc. as Servicer for U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II

**STATE OF TEXAS**

Dated this 12th day of November, 2020

COUNTY OF DALLAS

On this 12th day of November, 2020, before me the undersigned notary public, personally appeared Tonya M. Tillman, who proved to me through satisfactory evidence of identification to be the person whose name is signed on this document, who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge and belief.

/s/Brodrick Hill
Notary Public
Commission Expires: February 14, 2021